UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IBEW LOCAL NO. 236 HEALTH AND
BENEFIT FUND, PENSION FUND,
ANNUITY FUND, and their Trustees:
MICHAEL MASTROPIETRO, JOHN
MOSHER, MICHAEL MARTELL, JOSEPH
GROSS, BRIAN HART, and
CHRISTOPHER SPRARAGEN; and TRI-
CITY JOINT APPRENTICESHIP
TRAINING COMMITTEE and its Trustees:
MICHAEL MASTROPIETRO, JOHN
MOSHER, CHRIS LAMBERT, JOE MINER,
BRIAN HART, RALPH CIOFFI, STEVE
RIFENBURG, and STEPHEN
CHAMBERLAIN,

         Plaintiffs,

 vs.              1:24-cv-00717
                   (MAD/TWD)
GILL TECHNICAL CONSULTING, INC.,

         Defendant.
_____

**APPEARANCES:**           **OF COUNSEL:**

**SLEVIN & HART, P.C.**        **RICHARD SCOTT SIEGEL, ESQ.**
1300 Connecticut Avenue, N.W., Suite 700
Washington, D.C. 20036
Attorneys for Plaintiffs

**DREYER BOYAJIAN LLP**      **JOHN J. DOWD, ESQ.**
75 Columbia Street
Albany, New York 12210
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

1

Plaintiffs commenced this action on May 29, 2024, alleging Defendant's failure to pay mandatory contributions to employee health benefit, pension, and annuity funds, as well as a training committee. Dkt. No. 1. Plaintiffs are the Health and Benefit, Pension, and Annuity Funds ("the Funds") for a labor union, IBEW Local No. 236, along with the Funds' Trustees. *Id.* The Tri-City Joint Apprenticeship Training Committee ("the Committee" or "JATC") and its Trustees are also Plaintiffs in this action. *Id.* Plaintiffs are "multiemployer plans" within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). Dkt. No. 14-2 at ¶ 1. Defendant Gill Technical Consultants, Inc. is an employer subject to a payment agreement with the union. *Id.* at ¶¶ 3-5. Pursuant to a collective bargaining agreement ("CBA") and declarations of trust ("Trust Agreements"), Defendant is required to contribute money to the Funds and the Committee on behalf of its covered employees. *Id.* at ¶ 5.

Plaintiffs allege that Defendant failed numerous times to make its required payments over a period of several years. The complaint contains two claims: one for unpaid contributions (which also encompasses other unpaid monies, including interest and liquidated damages), and one for breach of labor contract. Dkt. No. 1. Pursuant to the parties' agreements, ERISA, and the Labor Management Relations Act of 1948 ("LMRA"), Plaintiffs seek at least $954,720.22 in unpaid contributions, interest, and liquidated damages. *See id.* at ¶ 1; Dkt. No. 14-2 at ¶ 34. Defendant filed an answer to the complaint on June 28, 2024. Dkt. No. 6.

On March 14, 2025, Plaintiffs moved for summary judgment. Dkt. No. 14. When Defendant failed to file a response to Plaintiffs' statement of undisputed material facts, which is required by Local Rule 56.1, the Court asked both parties to file letters explaining whether settlement negotiations were in progress. Dkt. No. 16. Both parties answered in the negative. Dkt. Nos. 17, 18. Thus, the factual allegations in Plaintiffs' statement of undisputed material facts

are deemed admitted to the extent such allegations are supported by the evidence.  Plaintiffs' motion for summary judgment is currently before the Court.

## II. BACKGROUND

According to Plaintiffs, the CBA and Trust Agreements require Defendant to "make monthly contributions to the Funds and the JATC and to submit monthly remittance reports to the Funds and the JATC."  Dkt. No. 1 at ¶¶ 8, 11; *see* Dkt. No. 14-2 at ¶¶ 5-6; *see also* Dkt. No. 14-4 at 27-29 (CBA); Dkt. No. 14-6 at 31-33 (Health and Benefit Trust Agreement); Dkt. No. 14-7 at 5-7 (Pension Trust Agreement); Dkt. No. 14-8 at 14-15 (Annuity Trust Agreement); Dkt. No. 14-9 at 3-5 (Collection Policy).  Payments to each Fund and the Committee are calculated separately, based on the monthly remittance reports.  Dkt. No. 14-2 at ¶ 7.  Although the remittance reports rely on a self-reporting system, they are subject to audit.  *Id.*

Under the CBA, if Defendant fails to pay contributions in a timely manner, Defendant must "pay interest to the Funds and the JATC . . . at the rate of 2 percentage points[1] over the prime rate per annum on all delinquent contributions, calculated from the due date of each delinquent contribution until the date the delinquent contribution is actually paid to the relevant fund[.]"  Dkt. No. 1 at ¶ 11(c); *see* Dkt. No. 14-2 at ¶ 8; Dkt. No. 14-4 at 29.  Simultaneously, under a Collection Policy established by the Funds, Plaintiffs may collect liquidated damages "equal to 20 percent (20%) per annum of the unpaid contributions," attorneys' fees, and costs from Defendant.  Dkt. No. 14-2 at ¶ 12; Dkt. No. 14-9 at 4-5.  The Committee does not appear to be

---

[1] The Court acknowledges that the parties' Collection Policy, which is dated November 1, 2022, specifies an interest rate of 1.5% "per month" on unpaid contributions.  Dkt. No. 14-9 at 4. Neither party disputes this figure.  It is unclear whether this figure is separate from the CBA language regarding interest rates.  However, because the CBA language is used in Plaintiffs' statement of undisputed material facts and is supported by the record, and because Defendant does not dispute those terms, the Court recognizes the CBA's language as determinative of the interest rate.

3

covered by the Collection Policy and has not established a liquidated damages rate (although it may receive "a second assessment of interest" under ERISA). Dkt. No. 14-2 at ¶¶ 11, 17; *see* Dkt. No. 14-9.

**A.     November 2022 to December 2023**

In their statement of undisputed material facts, Plaintiffs describe Defendant's alleged failures to pay. Dkt. No. 14-2. Before Plaintiffs commenced this lawsuit, Defendant allegedly submitted its remittance reports, but did not pay any contributions, from November 2022 through December 2023 (the "Initial Delinquent Months"). *Id.* at ¶ 13. Those contributions totaled at least $609,657.20 as of March 2025, according to Plaintiffs. *Id.* at ¶ 14. Importantly, in its answer, Defendant admits that it did not pay those contributions. Dkt. No. 6 at ¶ 11.

With respect to the Initial Delinquent Months, Plaintiffs also claim that Defendant failed to pay $111,381.58 in accrued interest on the unpaid contributions, as of March 2025. Dkt. No. 14-2 at ¶ 15. Although that amount was much lower when the complaint and answer were filed, Defendant admits to owing interest on the unpaid contribution principal for the Initial Delinquent Months. *See* Dkt. No. 6 at ¶ 20. Additionally, for those months, Plaintiffs claim that Defendant owes the Funds $118,323.33 in liquidated damages under the Collection Policy. Dkt. No. 14-2 at ¶ 16. Likewise, in lieu of liquidated damages, Defendant allegedly owes $3,295.93 (as of March 2025) in a second assessment of interest to the Committee. *Id.* at ¶ 17. Accordingly, Plaintiffs claim that Defendant owes at least $842,658.04 on the Initial Delinquent Months. *Id.* at ¶ 18.

**B.     September 2022, October 2022, and January 2024**

Additionally, Plaintiffs single out three months—September 2022, October 2022, and January 2024—as sources of unpaid interest only. *Id.* at ¶ 31. In its answer, Defendant admits that it failed to timely pay accrued interest on the contributions for those months. Dkt. No. 6 at ¶

11. Because it paid the contributions late (but before the commencement of this action), Defendant allegedly owes $3,220.32 in interest for these months, as of March 2025. Dkt. No. 14-2 at ¶ 31.

**C.   July 2024 to January 2025**

After Plaintiffs commenced this lawsuit, Defendant again allegedly paid contributions late and failed to pay interest between July 2024 and November 2024 (the "Subsequent Late-Paid Months"). *Id.* at ¶¶ 19-20. Plaintiffs claim that Defendant owes the Funds $5,545.65 in interest on the Subsequent Late-Paid Months. *Id.* at ¶ 21.

Plaintiffs further allege that Defendant owes delinquent payments for the months of December 2024 and January 2025 (the "Subsequent Unpaid Months," and together with the Subsequent Late-Paid Months, "Subsequent Delinquent Months"). *Id.* at ¶ 22. Defendant allegedly submitted its remittance reports to the Funds for both months in February 2025, but never paid the corresponding contributions to the Funds. *Id.* With regard to the Committee, Defendant submitted its December 2024 remittance report in March 2025 and paid the amount due for that month. *Id.* at ¶ 23. Defendant still owes the Committee money for January 2025, according to Plaintiffs. *Id.* at ¶ 25.

Specifically, for the Subsequent Delinquent Months, Plaintiffs claim that Defendant owes at least $60,153.28 in unpaid contributions to the Funds, $1,037.88 in contributions to the Committee for January 2025, $6,270.83 in interest to the Funds, $8.36 in interest to the Committee for January 2025, $41,007.61 in liquidated damages to the Funds, and $8.36 in a second assessment of interest to the Committee in lieu of liquidated damages. *Id.* at ¶ 29. Thus, the total amount claimed for the Subsequent Delinquent Months is at least $108,486.32. *Id.* Separate from this total, Plaintiffs also claim that Defendant failed to pay $177.77 in interest to

5

the Committee, which covers the Subsequent Late-Paid Months and December 2024.  *Id.* at ¶¶ 19, 30.

**D.     Total Amount Claimed**

Based on the foregoing, Plaintiffs allege that Defendant owes a grand total of at least $954,720.22 in unpaid contributions, interest, and liquidated damages.[2]  *Id.* at ¶ 34.

### III. DISCUSSION

**A.     Standard of Review**

"A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried[,]" and that the undisputed facts "warrant judgment for the movant as a matter of law."  *Grant v. Fischer*, No. 9:14-CV-1382, 2017 WL 1180866, *1 (N.D.N.Y. Mar. 29, 2017) (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted)).  In a summary judgment analysis, the Court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* (quoting *Chambers*, 43 F.3d at 36-37 (quotation and other citation omitted)).  "Moreover, . . . a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings."  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56).

When assessing the record to determine the existence of material factual disputes, the Court must "resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party."  *Id.* (citing *Chambers*, 43 F.3d at 36); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[2] That sum is calculated as follows: $670,848.36 in delinquent contributions, plus $117,838.54 in interest on delinquent contributions that either existed when the lawsuit was filed or arose during its pendency, plus $162,813.00 in liquidated damages, plus $3,220.32 in interest on late-paid contributions that Defendant paid before Plaintiffs brought this suit.  These numbers reflect the amounts explained in Plaintiffs' filings and will need to be adjusted to account for continuously accruing interest.

6

255 (1986).  If the non-movant does not respond to the motion or does not dispute the movant's statement of material facts, the Court "must be satisfied that the citations to evidence in the record support the movant's assertions."  *Grant*, 2017 WL 1180866, at *1 (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

**B.     Defendant's Obligation to Pay**

"ERISA requires that '[e]very employer who is obligated to make contributions to a multi employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or agreement.'"  *N.Y. State Teamsters Conf. Pension & Ret. Fund v. Yank Waste Co.*, No. 5:24-CV-84, 2024 WL 4284647, *4 (N.D.N.Y. Sept. 25, 2024) (quoting 29 U.S.C. § 1145).  The statute defines "multiemployer plans" as plans with more than one required employer contributor, which are maintained pursuant to at least one collective bargaining agreement between at least one employer and one employee organization.  29 U.S.C. § 1002(37)(A).

Likewise, in an action to enforce payment of required contributions, ERISA permits recovery of "unpaid contributions," "interest on . . . unpaid contributions," liquidated damages or a second assessment of interest (whichever is greater), attorneys' fees and costs, and "other legal or equitable relief as the court deems appropriate."  *Id.* § 1132(g)(2).  If the applicable payment plan specifies an interest rate, that rate shall apply if the employer has agreed to bind itself to the plan (such as by way of a trust agreement or other document forming the plan).  *Id.* § 1132(g); *see 32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 99 (2d Cir. 2019) (citing *Silverman v. Teamsters Loc. 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 286 (2d Cir. 2014)).  Importantly, if there is no other evidence that the employer intended to be bound by the plan, simply noting the existence of the plan in a CBA is insufficient to bind the employer.  *See*

7

*32BJ N. Pension Fund*, 935 F.3d at 95, 99 (citing *Jaspan v. Glover Bottled Gas Corp.*, 80 F.3d 38 (2d Cir. 1996)).

The Funds and Committee identify themselves as "multiemployer plans" under § 3(37) of ERISA. Dkt. No. 14-2 at ¶ 1; *see* 29 U.S.C. § 1002(37). As discussed, the record supports the Funds' and Committee's classification as multiemployer plans, and Defendant does not contest that classification. Furthermore, the Trust Agreements for each of the Funds demonstrate Defendant's intent to be bound by the contribution requirements to the Funds. *See* Dkt. Nos. 14-6 to 14-8. Defendant does not dispute the validity of the agreements or whether it assented to them.

However, the Committee's entitlement to contributions does not come from the Funds' Trust Agreements. Rather, the CBA states that employers subject to the CBA "shall contribute the amount of funds specified by the parties' signatory to the *local apprenticeship and training trust agreement*." Dkt. No. 14-4 at 26 (emphasis added). The record contains no such agreement, and parties generally may not rely solely on a CBA's mere mention of a trust agreement to support liability pursuant to ERISA. *See 32BJ N. Pension Fund*, 935 F.3d at 99; *see also Jaspan*, 80 F.3d at 42 ("[B]y undertaking in a collective bargaining agreement to pay contributions to certain benefit funds, [the employer] did not bind itself to a liquidated damages provision contained in a governing trust agreement to which it never agreed"). Importantly, though, Defendant does not dispute Plaintiffs' contentions that it owes money to the Committee, which derive support from elsewhere in the record and Defendant's own actions (for example, submitting sporadic remittance reports, even if the corresponding payments were delinquent). *See, e.g.*, Dkt. Nos. 14-3, 14-10, 14-14.

That lack of dispute distinguishes this case from others where incorporation of a trust agreement into a CBA by reference was insufficient to bind the employer. As such, the Court is

8

satisfied that the record supports Defendant's contractual obligation to pay both the Funds and the Committee.

**C.     Initial and Subsequent Delinquent Months**

As discussed previously, ERISA provides a statutory remedy for breached-against parties when an employer fails to make mandatory payments under a multiemployer plan. *See* 29 U.S.C. § 1132(g)(2); *Iron Workers Dist. Council of W.N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995). These remedies remain available even if the employer pays the delinquent principal amounts while the action is pending. *See Iron Workers Dist. Council*, 68 F.3d at 1507. The Second Circuit has determined that "once there is a favorable judgment [of unpaid principal contributions], the plaintiff is entitled to all the measures of relief [in 29 U.S.C. § 1132(g)(2)] not already obtained." *Id.* In other words, a plaintiff may benefit from ERISA's statutory remedies for principal contributions that were outstanding at the time the lawsuit commenced—or which arose during the lawsuit's pendency—but not for principal contributions paid before commencement of the action.[3] *See Upstate N.Y. Eng'rs Health Fund v. DiPizio Constr. Co.*, No. 5:14-CV-1539, 2017 WL 3016834, *8 (N.D.N.Y. July 14, 2017) ("ERISA does not permit damages for contributions paid prior to filing suit, even when those contributions were untimely paid").

Accordingly, if the Court is satisfied that Plaintiffs are entitled to delinquent contributions as a matter of law, Plaintiffs are also entitled to the other statutory remedies under 29 U.S.C. § 1132(g)(2): interest, liquidated damages or a second assessment of interest, attorneys' fees and

---

[3] Recovery of interest and other monies associated with contributions paid late—but before the lawsuit commenced—may be available under the LMRA. *See Upstate N.Y. Eng'rs Health Fund v. DiPizio Constr. Co.*, No. 5:14-CV-1539, 2017 WL 3016834, *8 (N.D.N.Y. July 14, 2017).

costs, and other relief as the Court deems appropriate. Because this suit was filed in May 2024, contributions paid before that point are excluded from this analysis.

   *1. Contributions*

Plaintiffs claim they are entitled to unpaid contributions for the Initial Delinquent Months (November 2022 through December 2023), and Subsequent Delinquent Months (July 2024 through January 2025). Dkt. No. 14-2 at ¶¶ 13-14, 18, 24, 29. Because Defendant failed to file a response to Plaintiffs' statement of undisputed material facts, the allegations of delinquent contributions are deemed admitted and undisputed, unless they lack support from the record. Furthermore, Defendant admits in its answer that it failed to pay contributions from November 2022 through December 2023. Dkt. No. 6 at ¶ 11.

As previously discussed, the record contains the CBA and Trust Agreements establishing Plaintiffs' entitlement to contributions from Defendant. Dkt. Nos. 14-4, 14-6 to 14-8. Additionally, to support their contentions, Plaintiffs provide declarations from two individuals familiar with the parties' payment plan: Samantha Miller and Erica Neale. Dkt. Nos. 14-3, 14-14. Miller, who oversaw contribution collection for the Committee through December 1, 2024, and still oversees contribution collection for the Funds, testified under penalty of perjury that Defendant "failed to pay the contributions due . . . for the months of November 2022 through December 2023 . . . ." Dkt. No. 14-3 at ¶¶ 17-19. Miller and Neale also testified that Defendant did not timely pay contributions from July 2024 through November 2024 (after Plaintiffs commenced their lawsuit), although it eventually paid the outstanding principal amount for those months. *Id.* at ¶¶ 22-23; Dkt. No. 14-14 at ¶ 4. Finally, Miller testified that Defendant did not pay contributions to the Funds for December 2024 or January 2025. Dkt. No. 14-3 at ¶¶ 25-26.

Neale testified that Defendant paid its December 2024 contributions to the Committee in March 2025, but it never paid the Committee for January 2025. Dkt. No. 14-14 at ¶¶ 5-6.

Thus, the record, undisputed by Defendant, shows that Plaintiffs are entitled to unpaid contributions for the Initial and Subsequent Delinquent Months, less the contributions already paid. Also, because those contributions were outstanding at the time the lawsuit commenced or arose while the suit was active, Plaintiffs are entitled to other statutory remedies associated with those sums, such as interest. Upon review of Plaintiffs' calculations, the Court finds that they accurately reflect the unpaid contributions owed as of March 2025: $670,848.36. Likewise, Defendant is also required to pay any delinquent contributions that arose after Plaintiffs filed their motion.

   2. *Interest*

Because the record establishes Defendant's failure to pay contributions during the periods of November 2022 through December 2023 and July 2024 through January 2025, and because those outstanding contributions either existed when the lawsuit was filed or arose during its pendency, Plaintiffs are entitled to interest on those sums. 29 U.S.C. § 1132(g)(2)(B); *see, e.g.*, *Upstate N.Y. Eng'rs Health Fund*, 2017 WL 3016834, at *7-8. The record also contains independent, uncontroverted support for Plaintiffs' entitlement to interest via the declarations of Miller and Neale. *See* Dkt. No. 14-3 at ¶¶ 18-19, 24, 28, 30-31; Dkt. No. 14-14 at ¶ 7. Because of this record support and Defendant's failure to dispute material facts regarding interest, Plaintiffs are entitled as a matter of law to interest on late-paid and unpaid contributions for the Initial and Subsequent Delinquent Months (as well as interest that began accruing after Plaintiffs filed their motion). The precise interest amount must be calculated based on the rate set forth in the CBA and Trust Agreements, and the date on which interest stopped or will stop accruing.

### 3. *Liquidated Damages and Second Assessment of Interest*

Similarly, Plaintiffs are entitled to liquidated damages or a second assessment of interest on the unpaid and late-paid contributions for the Initial and Subsequent Delinquent Months. "ERISA provides for liquidated damages in an 'amount equal to the greater of—(i) interest on the unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent' of the unpaid contributions." *Upstate N.Y. Eng'rs Health Fund*, 2017 WL 3016834, at *8 (quoting 29 U.S.C. § 1132(g)(2)(C)).

Here, the parties' Collection Policy provides for liquidated damages of "20 percent (20%) per annum of the unpaid contributions . . . ." Dkt. No. 14-2 at ¶ 12; Dkt. No. 14-9 at 4-5. The Committee is not covered by the Collection Policy and has no established liquidated damages rate, but it may still receive "a second assessment of interest" pursuant to ERISA. Dkt. No. 14-2 at ¶¶ 11, 17; *see* Dkt. No. 14-9. Accordingly, the calculated interest amount with respect to the Committee must be doubled to account for the second assessment of interest.

Also, while Plaintiffs' calculations of liquidated damages on unpaid contributions for the Initial and Subsequent Delinquent Months ($118,323.33 and $41,007.61, respectively) do not exceed 20% of the contributions that were unpaid when the lawsuit commenced or during its pendency, it is possible that the amount of accrued interest will surpass the liquidated damages amount. Per ERISA, Plaintiffs are entitled to the greater of those sums, which are to be calculated based on the applicable interest rate and amount of time that interest has or will have accrued.

### D.     Unpaid Interest on Contributions Untimely Paid Prior to This Action

In situations where contributions are untimely paid *before* commencement of an action to recover delinquent contributions, ERISA does not govern. *See Upstate N.Y. Eng'rs Health Fund*, 2017 WL 3016834, at *8. Instead, a court may award interest on the late payments pursuant to

the LMRA, "which provides a statutory basis for enforcing the contractual terms of [a] CBA." *Id.* (citation and internal quotation marks omitted). Specifically, the LMRA states that federal district courts have jurisdiction to hear "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ." 29 U.S.C. § 185(a). Plaintiffs assert that their affiliated union meets the statutory description, and Defendant does not dispute that contention. Dkt. No. 14-2 at ¶¶ 3-4.

When an individual employee sues under the LMRA for breach of a CBA, the individual must ordinarily exhaust any internal grievance procedures set forth in the CBA. *See Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990) (citing *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1976)); *Clayton v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 451 U.S. 679, 681 (1981). However, the Supreme Court has stated that "courts have discretion to decide whether to require exhaustion of internal union procedures." *Clayton*, 451 U.S. at 681 (citing *Nat'l Lab. Rels. Bd. v. Indus. Union of Marine & Shipbuilding Workers of Am., Loc. 22*, 391 U.S. 418, 426 & n.8 (1968)). Three factors are relevant to that determination: (1) hostility of union officials toward the employee; (2) the adequacy of internal union procedures' ability to address the grievance and award relief to the employee; and (3) whether exhaustion of internal procedures would cause unreasonable delay. *See id.* at 689.

The individual plaintiffs in this case are suing in their capacity as trustees of the Plaintiff Funds and Committee, not as employees of Defendant. Nevertheless, even if Plaintiffs were employees suing in that capacity and had not exhausted internal grievance procedures, the Court would have discretion to adjudicate the matter, pursuant to *Clayton*. For example, although the CBA contains subsections on internal grievance procedures, *see, e.g.*, Dkt. No. 14-4 at 5-6, 23, it is clear that the parties have been wholly unable to resolve this matter outside of court, *see* Dkt.

13

No. 17 ("Any efforts over the subsequent five months to negotiate a settlement have not been fruitful and Plaintiffs do not consider settlement negotiations to currently be ongoing"); Dkt. No. 18 ("[I]t appears that neither the Plaintiffs nor their counsel find [Defendant's offer to create a repayment plan] acceptable and are not willing to negotiate a settlement . . ."). Furthermore, despite Defendant's fourth affirmative defense that Plaintiffs "fail[ed] to satisfy conditions precedent contained in the parties' agreements," Defendant does not specifically allege that this affirmative defense stems from a failure to exhaust internal union remedies. *See* Dkt. No. 6 at ¶ 27; Dkt. No. 14-16 at 4 ("[Defendant] is not presently aware of any facts which establish that Plaintiffs failed to satisfy conditions precedent contained in the parties' agreements"). Accordingly, the Court determines that even if the exhaustion rule is construed to apply here, forcing the parties to exhaust internal remedies would be futile and cause undue delay.

On the merits of this claim, Plaintiffs argue that they are contractually entitled to $3,220.32 in interest on contributions that Defendant untimely paid for the months of September 2022, October 2022, and January 2024. Dkt. No. 14-2 at ¶ 31; Dkt. Nos. 14-11, 14-12. The record shows that Defendant made overdue contribution payments in April 2023, July 2023, and March 2024—before the commencement of this action—and owes the specified amount of interest. Dkt. No. 14-2 at ¶ 31; Dkt. No. 14-3 at ¶ 32. Defendant does not dispute these facts. Because Defendant breached its contractual obligations by paying late contributions and failing to pay interest on those contributions, and because the late payments were made before Plaintiffs brought suit, the LMRA permits Plaintiffs to recover that interest. *See Eng'rs Joint Welfare Fund v. C. Destro Dev. Co.*, 178 F. Supp. 3d 27, 34 (N.D.N.Y. 2016) (collecting cases).

**E.     Attorneys' Fees and Costs**

Finally, Plaintiffs state their intention to file a motion for attorneys' fees and costs after judgment is entered. Dkt. No. 14-1 at 16. Accordingly, the Court does not address the issue of attorneys' fees and costs at this juncture.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiffs' motion for summary judgment (Dkt. No. 14) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Plaintiffs' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 15, 2025
      Albany, New York

Mae A. D'Agostino
U.S. District Judge