UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

IBEW LOCAL NO. 236 HEALTH AND
BENEFIT FUND, PENSION FUND,
ANNUITY FUND, and their Trustees:
MICHAEL MASTROPIETRO, JOHN
MOSHER, MICHAEL MARTELL, JOSEPH
GROSS, BRIAN HART, and
CHRISTOPHER SPRARAGEN; and TRI-
CITY JOINT APPRENTICESHIP
TRAINING COMMITTEE and its Trustees:
MICHAEL MASTROPIETRO, JOHN
MOSHER, CHRIS LAMBERT, JOE MINER,
BRIAN HART, RALPH CIOFFI, STEVE
RIFENBURG, and STEPHEN
CHAMBERLAIN,

                              Plaintiffs,

         vs.                                              1:24-CV-717
                                                         (MAD/TWD)
GILL TECHNICAL CONSULTING, INC.,

                              Defendant.

---

APPEARANCES:                              OF COUNSEL:

SLEVIN & HART, P.C.                       RICHARD SCOTT SIEGEL, ESQ.
1300 Connecticut Avenue, N.W., Suite 700
Washington, D.C. 20036
Attorney for Plaintiffs

DREYER BOYAJIAN LLP                       JOHN J. DOWD, ESQ.
75 Columbia Street
Albany, New York 12210
Attorney for Defendant

Mae A. D'Agostino, U.S. District Judge:

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

1

This action arises from an employer's failure to make mandatory payments to three employee benefit funds and a training committee under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act of 1948 ("LMRA"). *See* Dkt. No. 19 at 2. Plaintiffs are the Health and Benefit, Pension, and Annuity Funds (the "Funds") for a labor union, the Tri-City Joint Apprenticeship Training Committee (the "Committee"), and the Funds' and Committee's Trustees. *See id.* Defendant Gill Technical Consulting, Inc. is an employer subject to a payment agreement with the union. *See id.*

On October 15, 2025, this Court granted Plaintiffs' unopposed motion for summary judgment. *See* Dkt. Nos. 19, 20. The Court determined that Plaintiffs were entitled, as a matter of law, to at least $954,720.22 in unpaid contributions, interest, and liquidated damages from Defendant. *See* Dkt. No. 19 at 6 & n.2. That calculation accounted for monies that accrued up to March 2025, when Plaintiffs filed their summary judgment motion. *See id.*; Dkt. No. 14; Dkt. No. 21-1 at 6. The Court noted that the final total "[would] need to be adjusted to account for continuously accruing interest[,]" Dkt. No. 19 at 6 n.2, and acknowledged Plaintiffs' intent to move for attorneys' fees and costs after entry of judgment, *see id.* at 15.

On October 29, 2025, Plaintiffs moved to amend the judgment to account for interest that accrued between March 2025 and October 15, 2025—the date this Court's judgment was entered—and to specify a sum certain that Defendant must pay. *See* Dkt. No. 21-1. They also moved for attorneys' fees and costs. *See id.* Defendant has not opposed the motion.

For the reasons stated below, Plaintiffs' motion is granted in part and denied in part.

## II. BACKGROUND

For a recitation of the factual background, the parties are referred to this Court's Memorandum-Decision and Order dated October 15, 2025. *See* Dkt. No. 19.

### III. DISCUSSION

**A.    Motion to Amend Judgment**

The October 15, 2025, judgment shows the Court granted Plaintiffs' motion for summary judgment.  *See* Dkt. No. 20.  Although the Court's decision contains calculations of the minimum amount due at that time, *see* Dkt. No. 19 at 6 & n.2, the judgment does not specify a precise amount that Defendant must pay, *see* Dkt. Nos. 19, 20.  Thus, Plaintiffs request amendment of the judgment to reflect a "sum certain" of unpaid contributions, liquidated damages, interest through the date judgment was entered, and attorneys' fees and costs.  Dkt. No. 21-1 at 5, 9-15.

#### *1. Rule 59(e)*

Plaintiffs cite Federal Rule of Civil Procedure 59(e) to support their motion to amend the judgment.  *See* Dkt. No. 21-1 at 8, 13-14.  The Rule provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."  FED. R. CIV. P. 59(e).  Although the Rule "does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment," *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004), the Second Circuit has stated that a court may grant such a motion "only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice[,]" *Metzler Inv. GMBH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (citations and internal quotation marks omitted).  "Manifest injustice exists where a jury's verdict is wholly without legal support." *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) (citing *Rothstein v. Carriere*, 373 F.3d 275, 291 (2d Cir. 2004); *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 129 (2d Cir. 1999); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).  Accordingly, "a district court should provide relief under Rule 59(e) only in rare cases." *Tse v. N.Y. Univ.*, No. 10-

3

CV-7207, 2016 WL 10907032, *1 (S.D.N.Y. Oct. 13, 2016) (citing *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009)).

Plaintiffs make clear that they "do not assert any error in legal authority or factual background by the Court." Dkt. No. 21-1 at 14. Rather, their "request relates only to the phrasing of the [j]udgment." *Id.* According to Plaintiffs, the absence of a monetary amount in the judgment "could preclude Plaintiffs from enforcing their [j]udgment, which would be a manifest injustice." *Id.* at 13. They do not assert that the newly provided interest calculations constitute new evidence under Rule 59(e). Because amendments under Rule 59(e) are to be used sparingly, and Plaintiffs do not assert any legal error or elaborate on why the judgment, as written, would rise to the level of manifest injustice, the Court declines to amend the judgment on that basis. *But see Genetec, Inc. v. PROS, Inc.*, No. 1:20-CV-07959, 2024 WL 3374805, *4 n.3 (S.D.N.Y. July 11, 2024).

### 2. Rule 60(a)

The Court instead considers amending the judgment under Rule 60(a). That Rule permits courts, on motion or *sua sponte*, to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." FED. R. CIV. P. 60(a); *see L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 956 F. Supp. 2d 402, 410 (E.D.N.Y. 2013); *Greer v. Mehiel*, No. 15-CV-6119, 2017 WL 128520, *2 (S.D.N.Y. Jan. 12, 2017); *see also Trs. of N.Y. State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 608 n.20 (2d Cir. 2024) ("We have repeatedly concluded that a district court may correct its judgment under Rule 60(a) to account for prejudgment interest and to specify a date of accrual even where the judgment originally did not provide for interest *at all*, so long as the record is clear that the court intended to award interest at

4

the time of judgment").  The Court may "clarify a judgment in order to correct a failure to memorialize part of its decision, to reflect the necessary implications of the original order, to ensure that the court's purpose is fully implemented, or to permit enforcement."  *L.I. Head Start*, 956 F. Supp. 2d at 410 (internal quotation marks omitted).  The amendment "'must reflect the contemporaneous intent of the district court as evidenced by the record[,]'" and may not be used to surreptitiously correct a judgment the court retroactively believes is incorrect.  *Id.* (quoting *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012)).

At the summary judgment stage, Plaintiffs showed they were entitled, as a matter of law, to at least $954,720.22 in unpaid contributions, interest, and liquidated damages from Defendant.  *See* Dkt. No. 19.  They request that the Court recognize additional interest that accrued between the date of their summary judgment motion and the date judgment was entered, and that the Court memorialize that amount as a sum certain in an amended judgment.  *See* Dkt. No. 21-1 at 5, 9-15.  In support, Plaintiffs provide the declaration of Jody Wilkerson, an accounts receivable manager for the third-party administrator responsible for collecting Defendant's contributions.  *See* Dkt. No. 21-2.  Plaintiffs do not challenge the Court's calculations of delinquent principal contributions or liquidated damages, *see* Dkt. No. 21-1 at 5-7, 13-15, which the Court set out in its earlier Memorandum-Decision and Order, *see* Dkt. No. 19 at 6 n.2.

The Court's October 2025 Memorandum-Decision and Order summarizes the law and agreements governing these calculations.  *See* Dkt. No. 19.

### a. *Initial Delinquent Months*

For the period of November 2022 through December 2023 (the "Initial Delinquent Months"), Defendant owes $609,657.20 in contributions.  *See* Dkt. No. 19 at 4, 11; Dkt. No. 21-1 at 14; Dkt. No. 21-2 at ¶ 5.  This obligation is undisputed.  According to Wilkerson's declaration,

the amount of interest owed on that amount, through October 15, 2025, is $148,913.08. *See* Dkt. No. 21-2 at ¶ 5. Defendant does not contest that assessment.

Under ERISA, in addition to interest, a plaintiff is entitled to "liquidated damages in an 'amount equal to the greater of—(i) interest on the unpaid contributions; or (ii) liquidated damages provided for under the [parties' agreement] in an amount not in excess of 20 percent' of the unpaid contributions." *Upstate N.Y. Eng'rs Health Fund v. DiPizio Constr. Co.*, No. 5:14-CV-1539, 2017 WL 3016834, *8 (N.D.N.Y. July 14, 2017) (quoting 29 U.S.C. § 1132(g)(2)(C)); *see* Dkt. No. 19 at 12. Plaintiffs correctly point out that the updated interest on the Initial Delinquent Months now exceeds the liquidated damages amount under the parties' agreement, which was established at summary judgment to be $118,323.33. *See* Dkt. No. 21-1 at 6-7; Dkt. No. 19 at 4, 12. Thus, in lieu of liquidated damages on the Initial Delinquent Months, Plaintiffs are entitled to a second assessment of interest in the amount of $148,913.08.

Accordingly, Defendant owes $907,483.36[1] for the Initial Delinquent Months. *See* Dkt. No. 21-1 at 14.

### b. *Subsequent Delinquent Months*

For the period of July 2024 through January 2025 (the "Subsequent Delinquent Months"), Defendant owes $61,191.16[2] in contributions. *See* Dkt. No. 19 at 5, 6 n.2; Dkt. No. 21-1 at 14

---

[1] $907,483.36 is derived from $609,657.20 (the unpaid contributions for the Initial Delinquent Months) plus $148,913.08 (the updated interest amount) plus $148,913.08 (the second assessment of interest).

[2] This figure was established at the summary judgment stage, and Plaintiffs recognize its accuracy in the motion now before the Court. *See* Dkt. No. 21-1 at 14 n.1. However, Wilkerson's declaration increases this figure by forty cents. *See* Dkt. No. 21-2 at ¶ 7. Because the delinquent contributions amount was established at summary judgment and neither party has argued that Defendant paid any of that amount due, the Court assumes that this discrepancy is a typo and proceeds on the understanding that Defendant owes $61,191.16 in contributions for the Subsequent Delinquent Months.

n.1.  According to Wilkerson's declaration, Defendant now owes $10,046.21 in total interest for the Subsequent Delinquent Months.  *See* Dkt. No. 21-2 at ¶ 8.  Defendant does not contest that assessment.

As the Court described in its earlier Memorandum-Decision and Order, the parties' agreement allows the Funds to collect liquidated damages equal to twenty percent "per annum" of unpaid contributions.  Dkt. No. 19 at 3.  Because that amount is greater than the updated interest amount, the Funds remain entitled to $41,007.61 in liquidated damages for the Subsequent Delinquent Months, which was established at summary judgment.  *See id.* at 5.

The Committee, however, is not included in that portion of the agreement.  *See id.* at 3-4. In lieu of liquidated damages, the Committee is entitled to a second assessment of the interest owed to it.  *See id.*  According to Wilkerson's declaration, that figure is $72.25, as of October 15, 2025.  *See* Dkt. No. 21-2 at ¶ 9.

Accordingly, Defendant owes $112,317.23[3] for the Subsequent Delinquent Months.

### c.  *Prior Unpaid Interest*

The Court previously noted that Defendant owes $3,220.32 in interest on late-paid contributions for the months of September 2022, October 2022, and January 2024.  *See* Dkt. No. 19 at 6 n.2, 12-14.  Because interest has not continued accruing on the late-paid contributions, that figure remains intact, pursuant to the LMRA.  *See* Dkt. No. 19 at 12-14.

### d.  *Total Amount Due*

---

[3] $112,317.23 is comprised of $61,191.16 (the unpaid contributions for the Subsequent Delinquent Months) plus $10,046.21 (the updated total interest for the Funds and the Committee) plus $41,007.61 (liquidated damages for the Funds) plus $72.25 (the updated second assessment of interest for the Committee).

Based on the foregoing, Defendant must pay Plaintiffs $1,023,020.91[4] under ERISA and the LMRA.  The Clerk of the Court is directed to amend the judgment, pursuant to Rule 60(a), to reflect that amount.  This amendment clarifies the Court's intended result in its Memorandum-Decision and Order dated October 15, 2025.  *See* Dkt. No. 19.

**B.    Motion for Attorneys' Fees and Costs**

Plaintiffs also move for attorneys' fees and costs.  *See* Dkt. No. 21-1 at 9-13.  They ask the Court to award $1,848.78 in costs and expenses, and $98,390 in attorneys' fees.  *See id.* Defendant does not oppose the motion.

ERISA permits the Court to award reasonable attorneys' fees and costs.  *See* 29 U.S.C. § 1132(g)(2)(D).  "'In calculating attorney's fees, the district court must first determine the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a presumptively reasonable fee.'"  *N.Y. State Teamsters Conf. Pension & Ret. Fund v. Escro Transp. LTD*, No. 5:25-CV-421, 2026 WL 785320, *6 (N.D.N.Y. Mar. 20, 2026) (quoting *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014)) (internal quotation marks omitted).  "This approach requires a district court to set 'a reasonable hourly rate, taking account of all case-specific variables,' and determine 'the appropriate billable hours expended.'"  *Id.* (quoting *Lilly v. City of New York*, 934 F.3d 222, 229-30 (2d Cir. 2019)) (other citations omitted).  The hourly rate is calculated by examining prevailing market rates in the district where the court sits.  *See id.*  The Court must also consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill level required by the case; (4) the preclusion of employment with other clients due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or

---

[4] $1,023,020.91 is derived from $3,220.32 (prior unpaid interest) plus $112,317.23 (amount due for the Subsequent Delinquent Months, as set out in footnote 3) plus $907,483.36 (amount due for the Initial Delinquent Months, as set out in footnote 1).

contingent; (7) any time limitations imposed by the client or the circumstances; (8) the extent of involvement in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008)); *see Grant v. Lockett*, 605 F. Supp. 3d 399, 405 (N.D.N.Y. 2022).

Here, Plaintiffs' counsel requests $98,390 in fees for 296.8 hours billed. *See* Dkt. No. 21-1 at 5, 12. Plaintiffs' counsel, Washington, D.C.-based firm Slevin & Hart, P.C., attests to "focus[ing] exclusively on the representation of employee benefit funds[,]" and its attorneys "have more than 150 years of combined experience in the employee benefit fund / ERISA field." *Id.* at 10. Four attorneys provided legal services to Plaintiffs: Richard Siegel (who is of counsel to the firm, has more than seventeen years of experience in employee benefits litigation, and has received public recognition for his work in the field), Jeffrey Swyers (a principal at the firm who has more than thirty years of litigation experience, with nineteen years "devoted exclusively to employee benefits/ERISA litigation"), Andrew Dietrich (a principal at the firm who has more than seventeen years of experience in employee benefits litigation exclusively), and Andrew Mills (an associate at the firm with more than three years of experience in employee benefits litigation exclusively). *See id.* at 11-12; Dkt. No. 21-3 at 19-22. Siegel assumed primary responsibility for Plaintiffs' representation and was assisted by two paralegals, Nezah Khandker and Olivia McClary. *See* Dkt. No. 21-1 at 11-12.

Siegel billed 59.2 hours toward Plaintiffs' representation, Khandker and McClary billed 2.6 hours collectively, Swyers billed 26.6 hours, Dietrich billed 10 hours, and Mills billed 198.4 hours. *See* Dkt. No. 21-3 at 44, 65, 85. Plaintiffs' counsel claims the 296.8 hours were spent

preparing the complaint, engaging in discovery, appearing in court, and preparing the summary judgment motion.  *See* Dkt. No. 21-1 at 12.  Plaintiffs' counsel provides extensive supporting records showing the individual tasks occupying that time.  *See* Dkt. No. 21-3 at 23-86.  In light of the available information, the Court finds the expended hours reasonable.

The firm "charged $350 per hour for Mr. Siegel's time, $450 per hour for Mr. Swyers's time, $365 per hour for Mr. Dietrich's time, $310 per hour for Mr. Mills's time, and $210 per hour for paralegals' time."  Dkt. No. 21-1 at 12.  Plaintiffs' counsel argues that these rates are reasonable, given their collective experience and accolades.  *See id.*  Over the last decade, courts in this District have found hourly rates of $250-$350 for partners, $165-$200 for associates, and $80-$95 for paralegals to be reasonable.  *See Grant*, 605 F. Supp. 3d at 404-05 (citing *Deferio v. City of Syracuse*, No. 5:16-CV-361, 2018 WL 3069200, *3 (N.D.N.Y. June 21, 2018)); *Sarwar v. Lake Placid Hotel Partners, LLC*, No. 8:20-CV-1387, 2022 WL 833374, *2 (N.D.N.Y. Mar. 21, 2022); *Bd. of Trs. of Laborers Pension Fund of Loc. Union No. 186 v. Casale Constr. Servs., Inc.*, No. 1:18-CV-583, 2018 WL 6047825, *4 (N.D.N.Y. Nov. 19, 2018) (collecting cases); *UFCW Loc. One Health Care Fund v. Greene Great Am., Inc.*, No. 6:23-CV-1441, 2025 WL 1506163, *5 (N.D.N.Y. May 27, 2025).  Presently, however, higher hourly rates may be reasonable.

Looking at the twelve fee factors, the Court notes that although this case does not appear to be novel compared to other ERISA actions, Plaintiffs were represented by highly experienced legal professionals who focus their practice exclusively on employee benefits litigation.  Counsel spent nearly 300 hours on Plaintiffs' case over more than a year, litigated to the summary judgment stage, and obtained a favorable result, albeit without opposition from Defendant.  Counsel has not argued whether the case necessitated increased skill level or precluded representation of other clients, whether the case was "undesirable," or whether time limitations

had any effect on the representation.  Counsel also does not discuss the nature of the fee agreement.

In previous cases that Slevin & Hart has litigated in this District, hourly rates similar to and greater than those requested here were approved.  *See UFCW Loc. One Pension Fund v. L.K.R. Enters., Inc.*, No. 6:19-CV-645, 2020 WL 830613, *3-4 (N.D.N.Y. Feb. 20, 2020) (citing *id.*, Dkt. No. 9-13 (N.D.N.Y. Aug. 1, 2019)) (approving a $445 hourly rate for a principal of the firm with nineteen years of experience, a $325 hourly rate for an associate, and a $200 hourly rate for paralegals); *UFCW Loc. One Pension Fund v. Natoli Indep. Retailers, Inc.*, No. 6:12-CV-682, 2012 WL 4793500, *5 (N.D.N.Y. Oct. 9, 2012) (citing *id.*, Dkt. No. 7-3 (N.D.N.Y. July 13, 2012)) (approving a $315 hourly rate for an associate and a principal, $280 and $240 for two other associates, and $165 for paralegals).  This Court, however, has previously reduced the firm's requested fees.  *See UFCW Loc. One Pension Fund v. Anami Foods, LLC*, No. 6:12-CV-632, 2013 WL 5236553, *4-5 (N.D.N.Y. Sept. 17, 2013); *Casale Constr. Servs.*, 2018 WL 6047825, at *3-4.

In 2013, this Court reduced the rates of partners—with twelve to twenty years of experience—from $395 and $315 to $250 and $225, respectively.  *See Anami Foods*, 2013 WL 5236553, at *4-5.  It also reduced the rate of an associate with eight years of experience from $280 to $200, and an associate with one year of experience from $240 to $175.  *See id.*  The Court reduced paralegals' rates from $165 and $160 per hour to $100 per hour.  *See id.*  The Court opined that counsel did not demonstrate any reason to use out-of-district hourly rates, and the reduced rates were "particularly appropriate" because the defendants defaulted.  *Id.* at *5 (citation omitted).

Here, Defendant did not default, and the case progressed past discovery. Plaintiffs' counsel litigated the matter to a favorable result at summary judgment, and Defendant does not oppose the proffered hourly rates. The Court awards attorneys' fees as follows: (1) $350 per hour for Siegel; (2) $400 for Swyers; (3) $365 for Dietrich; (4) $300 for Mills; and (5) $175 for Khandker and McClary. Accordingly, the total fees come to $94,985.[5]

In addition to attorneys' fees, Plaintiffs' counsel requests costs and expenses of $1,848.78. *See* Dkt. No. 21-1 at 13; 29 U.S.C. § 1132(g)(2)(D). These costs encompass LexisNexis fees, filing fees, and expenses associated with service of process, postage, long-distance calls, and faxes. *See* Dkt. No. 21-1 at 13. Plaintiffs' counsel provides records to support that figure. *See* Dkt. No. 21-3 at 45, 66, 86. With the exception of the LexisNexis fees, which this Court has previously held are not independently compensable costs, *see Casale Constr. Servs.*, 2018 WL 6047825, at *4-5, the Court finds the requested costs reasonable. Thus, Plaintiffs' counsel is entitled to $576.30 in costs and expenses.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that the judgment shall be amended to reflect a sum certain of $1,118,582.21 that Defendant must pay, as set forth herein;[6] and the Court further

---

[5] The total amount of attorneys' fees is $94,895, as comprised of the following hours expended and reasonable hourly rates: 59.2 ($350) (Siegel's hourly rate times number of hours expended) plus 26.6 ($400) (Swyers's hourly rate times number of hours expended) plus 10 ($365) (Dietrich's hourly rate times number of hours expended) plus 198.4 ($300) (Mills's hourly rate times number of hours expended) plus 2.6 ($175) (Khandker and McClary's hourly rate times number of hours expended).

[6] The total amended judgment is as follows: $1,118,582.21, which comes from the following: $576.30 (costs and expenses) plus $94,985 (total fees for attorneys and paralegals) plus

  **ORDERS** that Plaintiffs' motion for attorneys' fees and to alter or amend judgment (Dkt. No. 21) is **GRANTED in part** and **DENIED in part**; and the Court further

  **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  June 16, 2026
  Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

$1,023,020.91 (delinquent contributions, interest, and liquidated damages under ERISA and the LMRA, as summarized herein).